UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. C-06-563 |
| | § | |
| CITGO PETROLEUM CORPORATION, | § | |
| CITGO REFINING AND CHEMICALS | § | |
| COMPANY, L.P., | § | |
|    Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is the Motion of Community Members to be Declared Victims under the Crime Victim[s'] Rights Act (Dkt. No. 776) and Motion of Additional Community Member[1] to be Declared Victim under the Crime Victim[s'] Rights Act (Dkt. No. 812), to which Defendants CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, L.P.'s (collectively "CITGO") have responded (Dkt. Nos. 780, 811)[2] and the Community Members have replied (Dkt. Nos. 798, 818). Having considered the motion, responses, replies, oral argument of counsel, record, and applicable law, the Court is of the opinion that the Community Members' motions (Dkt. Nos. 776, 812) should be **GRANTED**.

**I. Background**

In April 2008, the Government moved to have more than 300 members of the Corpus Christi community—including the same Community Members bringing the present motion—

---

    1. The Community Members include James Galloway, Joel Mumphord, Rosalinda Armadillo, Jewell Allen, Mavis Branch, Feliciano Cantu, Robe Garza, Diana Linan, Thelma Morgan, James Shack, Jean Salone, Julian Garcia, John Garcia, and Betty Whiteside. The Additional Community Member is Frank Perez.
    2. The Community Members filed a motion to strike Docket No. 811 as "improper" on the grounds that "a surreply is not permitted by the rules of this Court or by federal rules" and that CITGO was "attempting to sandbag the community members by raising new arguments at a time when they will not have an opportunity to respond." (Dkt. No. 813 at 1.) During oral argument held September 10, 2012, CITGO explained that it did not intend to sandbag the Community Members, but merely wished to respond to arguments raised in the Community Members' mandamus petition to the Fifth Circuit. That same day, the Court granted the Community Members leave to reply to CITGO's filing. Accordingly, the Motion of Community Members to Strike Improper "Surreply" (Dkt. No. 813) is **DENIED**.

designated as victims under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. (Dkt. No. 574.) Shortly thereafter, the Court began hearing testimony from a representative sample of the alleged victims—including six of the Community Members[3]—as well as CITGO employees, Texas Commission on Environmental Quality (TCEQ) agents, and a series of experts offered by the Government and CITGO.

More than a year ago, the Court granted CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 575), concluding that these individuals could not be considered victims under CVRA because they could not demonstrate a causal connection between their alleged injuries and the offenses of which CITGO was convicted. (Dkt. No. 729.) In reviewing the scientific evidence before it, the Court recognized that "none of the medical records documenting more than 950 office visits diagnose[d] chemical exposure and none of the other medical records even mention chemical odors." (*Id.* at 7.) The Court further found that because the monitoring data from the Corpus Christi area did not show readings of volatile organic compounds that exceeded state and federal regulatory levels, there was no proof that the concentration of chemicals in the emissions from Tanks 116 and 117 rose to the level necessary to cause health effects. (*Id.* at 6–7.) Because many of the alleged victims were either elderly persons who struggled with a number of common ailments, had serious medical conditions, and/or admitted to smoking cigarettes, and because all the alleged victims also lived near a group of oil refineries in Corpus Christi, the Court concluded that the evidence offered could not establish that the alleged victims' ailments were caused by Tanks 116 and 117 and not by one or more of these myriad of other factors. (*Id.* at 5–7.) The Government filed a motion to reconsider the Court's Order (Dkt. 733), which the Court denied on July 27, 2011. (Dkt. No. 737.)

---

3. Mumphord, Armadillo, Linan, Morgan, Salone, and Whiteside testified.

On July 6, 2012, the Community Members filed the present motion asking the Court to consider "two new arguments, never advanced by the Government, to be recognized as 'victims.'" (Dkt. No. 776 at 2.) In the currently-pending motion, the Community Members argue that they do not need to prove that they suffered medically-documented physical injuries or illnesses from CITGO's crimes in order to be declared "crime victims" under the CVRA. The Community Members further claim that they have suffered other forms of harm that qualify them as victims, including breathing noxious and irritating gases, emotional distress, property damage, and risk of future injury.

On August 22, 2012, the Court denied the Community Members' motion as untimely. (Dkt. No. 799.) The Community Members then petitioned the United States Court of Appeals for the Fifth Circuit for a writ of mandamus directing this Court to give them crime victim status under the CVRA. The Fifth Circuit concluded that "[t]he CVRA does not contain a time limit within which putative crime victims must seek relief in the district court" and granted the Community Members' mandamus petition "to the extent that the district court must hear all new victim status arguments being submitted pre-sentencing by pro bono counsel." *In re: Jewell Allen*, No. 12-40954 at 3 (5th Cir. Sept. 6, 2012).

**II. Legal Standard**

The CVRA provides that victims of a federal crime may appear and be heard during some phases of the prosecution of the defendant charged with that crime. 18 U.S.C. § 3771(a). The statute defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." *Id.* § 3771(e).

The Fifth Circuit recently set forth the proximate cause standard under the CVRA as follows:

> An act is a but-for cause [ ] of an event if the act is a *sine qua non* of the event—if, in other words, the absence of the act would result in the non-occurrence of the

> event. Conversely, an act is not a but-for cause of an event if the event would have occurred even in the absence of the act. *Moser v. Tex. Trailer Corp.,* 623 F.2d 1006, 1013 (5th Cir. 1980) (quoting W. PROSSER, THE LAW OF TORTS § 41, at 238 (4th ed. 1971)). As Professor David Robertson has explained, ascertaining the existence of but-for causation requires a court to create "a mental picture of a situation identical to the actual facts of the case in all respects save one: the defendant's wrongful conduct is now 'corrected' to the minimal extent necessary to make it conform to the law's requirements." David W. Robertson, *The Common Sense of Cause in Fact*, 75 TEX. L. REV. 1765, 1770 (1997). Then, the court asks "whether the injuries that the plaintiff suffered would probably still have occurred had the defendant behaved correctly in the sense indicated." *Id.* at 1771. Only if the answer to that question is "No" is the defendant's conduct a but-for-cause of the plaintiff's injuries.

*In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011).

Both the Fifth Circuit and the CVRA itself are silent as to the definition of "harm." However, Merriam-Webster defines "harm" as "physical or mental damage: injury." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2006); s*ee also* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. 1992) (defining harm as "physical or psychological injury or damage").

### III. Analysis

#### A. Are the Community Members "crime victims" under the CVRA?

To determine whether the Community Members are crime victims, the Court must first identify the behavior constituting "commission of a Federal offense." If CITGO's criminal behavior caused the Community Members direct and proximate harm, then they are victims under the CVRA.

CITGO was convicted of Counts Four and Five of the Superseding Indictment, which alleged that, "[f]rom on or about January, 1994, and continuing to on or about May, 2003 . . . [CITGO] did knowingly operate a new stationary source, an oil water separator, which may emit a hazardous air pollutant, benzene, that is, tanks[s] 116 [and 117] at the Citgo East Plant Refinery, without an emission control device; to wit, a fixed or floating roof to prevent the

emission of benzene into the environment." (Dkt. No. 287 ¶¶ 38, 40.) In order to determine whether CITGO's federal offenses caused the Community Members' harm, the Court must consider whether the harms that the Community Members suffered "would probably still have occurred" had CITGO maintained roofs on Tanks 116 and 117. *See Fisher*, 649 F.3d at 403.

Using the same evidence presented at the April 2008 presentencing hearings, the Community Members assert they are victims under the CVRA because: (1) they had to breathe in noxious fumes; (2) they suffered other harms, including mental harm, devaluation to property, and the destruction of vegetation; and (3) chemical emissions from Tanks 116 and 117 exposed them to a future risk of health harms, including cancer, and have forced them to undergo medical monitoring.

### 1. Harm from Breathing Noxious Fumes

The record shows that on November 7, 1996, Ethel Simmons and Community Members Joel Mumphord and Diana Linan called TCEQ to complain of a "strong odor" that was "going into their home" or school. (5/2/08 Tr. 40:4–41:8.) TCEQ reports reflected that "[e]ach complainant claimed the odor was nauseating and making them dizzy. Each claimed the odor was getting stronger." (*Id.* 40:25–41:2.) Linan testified that she spent a substantial amount of time outside that day with students and "developed a lot of itchy, watering eyes, the sore throat, itchy throat, and then I developed a lot of nosebleeds . . . [and] a severe headache." (4/29/08 Tr. 180:12–181:2.) Linan further testified that her symptoms were so severe that she contacted a doctor later that day. (*Id.* 180:16-19.) Mumphord testified that he had a similar physical reaction to the fumes: "you almost choke to death. It's so strong that you can't hardly catch your breath." (4/29/08 Tr. 224: 21–225:1.)

The record further shows that on November 7, 1996, TCEQ investigator Daywood responded to an odor complaint near Nueces Bay Boulevard. (5/1/08 Tr. 9:16–10:21.) Daywood

5

testified that she could smell the odor before even getting off the freeway exit, and when she arrived at Simmons' house, Simmons said that "she was having trouble talking because she was having trouble breathing and the odor at [the] location was very strong." (*Id.* 10:17-23, 12:10-14.) Simmons also told Daywood that she was "dizzy," experiencing "a headache," and feeling generally "ill" because '"the odor had been going on for some time." (*Id.* 12:15-17.) Daywood testified that she noticed that Simmons' eyes were "red and very watery" and "[s]he was crying," and that Daywood herself had begun to feel "dizzy," experience "a headache," and get "nauseated." (*Id.* 12:18-21, 13:1-4.)

After speaking with another complainant, Daywood drove to CITGO's East Plant Refinery, as she was familiar with the particular odor that emanated from that location. (*Id.* 15:2-11.) Eric Bigelow, an employee of CITGO with whom Daywood had prior contact regarding similar complaints, met her there. (*Id.* 15:12-14, 15:22-24.) To determine the source of the odor, Bigelow and Simmons drove down the fence line to Tanks 116 and 117. (*Id.* 16:15-23.) To ensure that the odor was coming from Tanks 116 and 117 and not another source, Daywood went to another refinery, after which she confirmed that the odor was coming from Tanks 116 and 117. (*Id.* 17:24–18: 15.) Daywood then issued CITGO a notice of violation because the odors were determined to be "a nuisance." (*Id.* 18:16-20.) A letter sent to CITGO by the Texas Natural Resource Conservation Commission after the incident further confirmed that "it was determined that the odors were coming from the open top tank and from the use of the vacuum truck at tank number 117" and that these odors amounted to "[n]uisance . . .conditions" and were "confirmed at several residents" on November 7, 1996. (*Id.* 24:1-9.)

Similarly, on January 15, 1997, ten complainants called TCEQ to complain about a strong odor, including Community Member Thelma Morgan. (5/20/08 Tr. 41:9–41:25.) Morgan testified that the odors caused her and her family to "suffer[] with stuffy nose, headaches, and

bronchitis." (4/28/08 Tr. 231:19-22.) Like the November 7, 1996 incident, TCEQ investigators traced the odors back specifically to Tank 117. (5/2/08 Tr. at 40:20–42:11.)

Finally, the Court notes that CITGO's original Memorandum in Support of Its Motion to Exclude the Testimony of the Alleged Victims acknowledged that, "[f]or the purpose of this hearing, CITGO does not dispute that . . . nuisance level odor complaints were traced to tanks 117 by TCEQ" on November 7, 1996 and January 15, 1997. (Dkt. No. 688 at 1 n.1 (citing 5/2/08 Tr., 40:4–42:9).)

The Court is now persuaded that it applied the incorrect legal standard when it determined that the Community Members must provide documentary medical evidence confirming injury or illness due to chemical exposure in order to qualify as victims under the CVRA. Instead, the Court finds that testimony by the Community Members and other witnesses that they suffered symptoms such as burning eyes, bad taste in the mouth, nose burning, sore throat, skin rashes, shortness of breath, vomiting, dizziness, nausea, fatigue, and headaches is sufficient to constitute "harm" under the CVRA.

The Court further finds that just because monitoring data from the Corpus Christi area did not show readings of volatile organic compounds that exceeded state and federal regulatory levels during the time period in question does not mean that the Community Members' health effects were not caused by Tanks 116 and 117. Using the standard set forth in *In re Fisher*, the Court finds that, had CITGO had proper emission controls on Tanks 116 and 117, the Community Members would not have suffered the aforementioned symptoms on November 7, 1996 and January 15, 1997. Thus, CITGO's "commission of a Federal offense" directly and proximately harmed the Community Members on those specific days.

Accordingly, the Court's previous orders ruling that the Community Members are not victims under the CVRA are reversed. Because the Court has determined that the Community

7

Members are crime victims based on the immediate negative health effects they suffered from breathing noxious fumes from Tanks 116 and 177, the Court need not consider their arguments that emotional distress, increased risk of future disease, and property-related harms would independently confer crime victim status on them under the CVRA.

**B. To what rights are the Community Members entitled?**

Once an individual is declared to be a "crime victim" under the CVRA, he or she is entitled to the following rights:

(1) The right to be reasonably protected from the accused.

(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

(3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

(4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5) The reasonable right to confer with the attorney for the Government in the case.

(6) The right to full and timely restitution as provided in law.

(7) The right to proceedings free from unreasonable delay.

(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a). The CVRA places responsibility on the Court for its implementation, requiring that "the court shall ensure that the crime victim is afforded [those] rights." *Id.* § 3771(b)(1).

As crime victims, the fifteen Community Members ask the Court to allow at least some of them—as well as other similarly-situated persons—to deliver an oral victim impact statement

at sentencing. The Community Members also seek leave of Court to file a written sentencing memorandum focusing on two issues related to restitution: (1) medical monitoring and (2) a "buy out" of some residential properties. The Community Members further move the Court to direct the Probation Office to prepare an Amended Presentence Investigation Report (PSI) that includes victim impact and victim restitution information pursuant to FED. R. CRIM. P. 32(d)(2)(B). According to the Community Members, "This will not delay the process, as the Government has already delivered victim impact statements to the probation office." (Dkt. No. 818 at 17.)

### 1. Victim Impact Statements

The Court finds that the Community Members are entitled to deliver oral impact statements at sentencing.

### 2. Amended Presentence Investigation Reports

The PSIs prepared by the Probation Office in 2008 identified at least 116 potential victims and referenced victim impact statements from approximately 60 individuals. (Dkt. Nos. 545 & 548, ¶¶ 20—81.) The Court finds that the Probation Office should prepare Amended PSIs that include any victim impact statements that were not previously submitted.

### 3. Restitution

Finally, the Court finds that the Community Members may submit a written sentencing memorandum focusing on restitution related to medical monitoring and a "buy out" of some residential properties. The Court will then determine whether the Community Members are entitled to restitution, or whether "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims, [such that] the court may decline to make such an order." *See* 18 U.S.C. § 3663(a)(1)(B)(ii); *see also* U.S. Sentencing Guidelines Manual § 8B1.1(b)(2) ("to the extent the court finds, from facts on the record, that (A) the number of identifiable victims is

so large as to make restitution impracticable; or (B) determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process").

**IV. Conclusion**

For the reasons set forth above, the Motion of Community Members to be Declared Victims under the Crime Victim[s'] Rights Act (Dkt. No. 776) and Motion of Additional Community Member to be Declared Victim under the Crime Victim[s'] Rights Act (Dkt. No. 812) are **GRANTED**, and the Court's previous orders ruling that the Community Members are not victims under the CVRA (Dkt. Nos. 729 & 737) are **REVERSED**.

It is so **ORDERED**.

**SIGNED** this 14th day of September, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE