UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|    Plaintiff, § | | |
| § | | |
| v. § | CRIMINAL ACTION NO. C-06-563 | |
| § | | |
| CITGO PETROLEUM CORPORATION, § | | |
| CITGO REFINING AND CHEMICALS § | | |
| COMPANY, L.P., § | | |
|    Defendants. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendants CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, L.P.'s (collectively "CITGO") Motion to Bar the Government from Seeking a Monetary Penalty in Excess of the Statutory Maximum (Dkt. No. 820). At the Court's request, CITGO and the Government have also filed memoranda of law on this issue (Dkt. Nos. 808, 821). Having considered the motion, memoranda of law, record, and applicable law, the Court is of the opinion that CITGO's motion should be **GRANTED**.

**I. Background**

The CITGO entities were convicted on two felony counts each of operating an oil water separator without the proper emission control devices, in violation of 42 U.S.C. § 7413(c)(1), 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.692-4. The CITGO entities were also convicted on three misdemeanor counts each of unlawfully taking and aiding and abetting the taking of migratory birds in violation of 16 U.S.C. § 703(a).

The Government concedes that, under *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), the "total maximum statutory fine" the Court may impose upon the CITGO entities "is $2,090,000" ($2,000,000 for violations of the Clean Air Act and $90,000 for violations of the

Migratory Bird Treaty Act). (Dkt. No. 804 at 2.) The Government recommends the maximum fine of $2,090,000.

The Government also recommends that the Court impose the maximum term of probation of five years and impose, as a mandatory condition of probation under 18 U.S.C. § 3563(a)(1), that CITGO not commit another Federal, State, or local crime during the term of probation. Finally, the Government recommends that the Court order CITGO to comply with the following discretionary conditions of probation:

(1) Perform Community Service pursuant to 18 U.S.C. § 3563(b)(12), by fully funding seven proposed community service projects in the amount of $44,000,000;

(2) Report to a probation officer as directed by the Court and allow a probation officer to visit the facility pursuant to 18 U.S.C. §§ 3563(b)(15),(16).

(3) Fund a recognized environmental contractor (such as TRIHYDRO or SAGE Environmental) to serve as a Court Appointed Monitor (CAM) to assist the Court in supervising the terms of probation and overseeing the creation and implementation of an Effective Compliance and Ethics Program pursuant to U.S.S.G. § 8B2.1.

(4) Comply with the terms of any court order or order of an administrative process pursuant to the law of a State, 18 U.S.C. § 3563(b)(20), by requiring CITGO to comply with the terms of the Consent Decree entered January 26, 2005, between CITGO and the U.S. Environmental Protection Agency.

CITGO has represented to the Court that it would agree to the maximum fine and that it would not seek the return of that fine on appeal so long as the fine is used to fund charitable organizations or community service projects in the community. CITGO also has proposed that, as a condition of probation, it would agree to the appointment of an acceptable CAM. However, CITGO objects to the Government's attempt to impose a monetary penalty more than 20 times the maximum statutory fine by describing these payments as "community service" or "conditions of probation."

**II. Analysis**

Because the sentencing guidelines provide that a court may order a defendant to "satisfy such other conditions as the court may impose," 18 U.S.C. § 3563(b)(22), the Government argues that the Court is authorized to order CITGO to fulfill "indeterminate" and "open-ended" community service obligations, "limited only by an abuse of discretion standard and the Eighth Amendment to the United States Constitution." (Dkt. No. 821 at 6.) Thus, despite the $2,090,000 maximum statutory fine for CITGO's crimes, the Government claims the Court has the authority to order CITGO to pay $44,000,000 in "community service obligations" to a number of local charities as a condition of probation pursuant to 18 U.S.C. §§ 3563(b)(12),(22).

"There is no doubt that the federal district courts have the power, subject to some constraints, to impose 'community service' sentences pursuant to the general grant of discretion contained in the [Sentencing Act]." *United States v. John Scher Presents, Inc.*, 746 F.2d 959, 962 (3rd Cir. 1984). That statute explicitly provides that the Court may order, as a discretionary condition of probation, that the defendant "*work* in community service as directed by the court." 18 U.S.C. § 3563(b)(12) (emphasis added). "Such sentences require that the defendant *become personally involved—devoting both time and energy*—in a project that serves the public interest, and thereby inculcate in the defendant a sense of social responsibility." *John Scher Presents, Inc.*, 746 F.2d at 963 (emphasis added).

As CITGO correctly recognizes, "the Government does not want CITGO to perform community service; it wants CITGO to make payments to charity." (Dkt. No. 808 at 3.) According to the Government's Recommendation, the Court should order CITGO to "*fully fund the seven community service projects/proposals received by the Court.*" (Dkt. No. 804 at 4.) However, the Government makes no mention of *work* CITGO should perform. Here, as in *John Scher Presents, Inc.*:

> The condition of probation [recommended to] the district court in this case, however, does not involve community service. In abiding by the [recommended] conditions, the defendants, along with their managers and employees, would not have to alter their behavior in any way: they would simply continue their normal business operations . . . The probationary condition ordered by the district court merely requires the corporation to pay money. The only difference between this condition and a fine is that here the payee on the corporate checks would be a charitable organization rather than the United States Treasury.

*John Scher Presents, Inc.*, 746 F.2d at 963. As the Fifth Circuit recognized in *Haile*, "the limitations imposed by the act . . . cannot be circumvented by creative labeling." *United States v. Haile*, 795 F.2d 489, 491 (5th Cir. 1986) (quoting *John Scher Presents, Inc.*, 746 F.2d at 964).

The Fifth Circuit's *Haile* decision also explicitly held that a district court may not condition probation on the payment of money to charity, explaining that Congress has stated that "probation may be conditioned on a prescribed payment of money" in only three specific circumstances: a fine, restitution, and the support of legal dependents. *Haile*, 795 F.2d at 491. (citing 18 U.S.C. § 3651). The court further reasoned:

> Had Congress not intended to be restrictive in its grant of authority regarding fines, this enumeration would have been surplusage, for the broad language in the opening paragraph would have authorized all three forms of payment, and more. Congress, however, clearly chose to limit the use of money payments as conditions of probation by enumerating those that are permitted.

*Id.*; *see also United States v. Turner*, 628 F.2d 461, 467 (5th Cir. 1980); *United States v. Jimenez*, 600 F.2d 1172, 1174–75 (5th Cir. 1979) (rejecting the First Circuit's holding that conditioning probation on repayment of court-appointed counsel is a "fine," and holding that "'Fine' should be limited to monetary penalties that are provided for in criminal statutes"). Every circuit court to consider the issue has reached the came conclusion. *See United States v. Missouri Valey. Constr. Co.*, 741 F.2d 1542, 1544 (8th Cir. 1984) (condition of probation that defendant contribute $1,475,000 to the University of Nebraska Foundation to endow a chair in ethics held unlawful); *United States v. Wright Contracting Co.*, 728 F.2d 648, 652–53 (4th Cir. 1984) (vacating conditions of probation that defendants contribute money to charitable organizations, observing

4

that, even though the district court characterized the payments as deterrent and rehabilitative in nature, they had the effect either of punishing the corporation or of compensating the public at large in some way for the harm the defendants had caused); *United States v. Prescon Corp.*, 695 F.2d 1236, 1242–44 (10th Cir. 1983) ("The Government contends that the Probation Act (18 U.S.C.A. § 3651) does not authorize a judge to permit a corporation, as an alternative to payment of a fine, to make a contribution to a person or group not aggrieved by the crime. We agree.").

The Government argues that the cases cited above are no longer good law because they were based on an earlier statute that was repealed by the Sentencing Reform Act of 1984, which significantly expanded a district court's authority to order conditions of probation. The Government is correct that the Probation Act was replaced by the Sentencing Reform Act, which provides that if a sentence of a fine has been imposed, payment of the fine is a mandatory condition of probation and that the court may impose discretionary conditions of probation that the defendant "(1) support his dependents and meet other family responsibilities," and "(2) make restitution to a victim of the offense under section 3556." 18 U.S.C. §§ 3563(a),(b)(1)-(2). As acknowledged above, the Sentencing Reform Act also provides that a court may order a defendant to perform work in community service as a condition of probation. *Id.* § 3563(b)(12).

Commentary to the Policy Statement concerning community service for organizations states that "[*a*]*n organization can perform community service only by employing its resources or paying its employees or others to do so.*" USSG § 8B1.3. "*Consequently*," the guidelines acknowledge, "*an order that an organization perform community service is essentially an indirect monetary sanction . . . .*" *Id.* Thus, even if the Government is correct in its assertion that the Court may order CITGO to make "community service payments" to several charities so that those organizations may perform work in community service on CITGO's behalf, the Government cites no authority holding that these "indirect monetary sanctions"—when coupled

5

with any other fine imposed by the court—can exceed the maximum statutory fine. The Court is unable to locate any such authority, and at least one state supreme court has explicitly held that they cannot. *State v. Pieger*, 692 A.2d 1273, 1280 (Conn. 1997) (holding that "although a charitable donation may be a valid term of probation" under Connecticut law, "a trial court should not use [the probation power] as a pretext to impose a fine in excess of the statutory maximum, or to circumvent making the requisite findings for determining restitution").

Finally, the Government argues that, "[a]t least for purposes of an *Apprendi* analysis, community service obligations are indistinguishable from restitution." (Dkt. No. 821 at 8.) Courts may order restitution in excess of the statutory maximum fine where identifiable victims have suffered determinable losses as a direct result of a defendant's crime. 18 U.S.C. § 3664, 3664A. However, payments to charities not directly harmed by CITGO's crimes do not constitute restitution, because the charities are not victims of CITGO's offenses. *See United States v. Chem. & Metal Indus., Inc.*, 677 F.3d 750, 752 (5th Cir. 2012) (vacating restitution award "because there was no finding of loss"); *United States v. Hughey*, 147 F.3d 423, 437–38 (5th Cir. 1998) (reversing order of restitution "in excess of those amounts attributable to the conduct made the basis of [the defendant's] conviction" on the grounds that "an award of restitution may not include losses that do not directly result from the offense made the basis of the conviction supporting the restitution order"); *United States v. Upton*, 91 F.3d 677, 686 (5th Cir. 1996) ("Restitution for victims can only be awarded for the loss caused by the specific offense that is the basis of the offense of conviction."). As the Second Circuit aptly stated in *Fiore*:

> Though the statute allows that the defendant may, as a condition of probation, be required to pay "a" fine, it would not be proper to read this as an implicit waiver of the statutory maximum fines set by Congress. The Probation Act also allows the sentencing court to require a defendant to pay restitution or reparation for "actual damages or loss" to those "aggrieved" "by the offense for which the conviction was had," or to provide support to those persons "for whose support he

6

is legally responsible." Neither of these provisions, however, allow the sentencing court to impose fees and charges at will on the defendant. The defendant plainly may not be required to support persons—corporate or natural—of the court's choosing, but only those for whom he is already responsible. Similarly, the defendant may not be required to pay reparations to persons not aggrieved by his crimes, or simply to the community at large. [*United States v. Clovis Retail Liquor Dealers Trade Association*, 540 F.2d 1389, 1390 (10th Cir.1976).] Nor may the defendant be required to pay reparations for crimes of which he has not been specifically convicted. *United States v. Follette*, 32 F. Supp. 953, 955 (E.D. Pa. 1940). These protections would be a sham if sentencing courts could set terms of probation that exceed the amount due as a fine, support or reparation.

*Fiore v. United States*, 696 F.2d 205, 209–10 (2d Cir. 1982).

In sum, any imposition of a sentence of probation that requires CITGO to pay the equivalent of a monetary penalty in excess of the maximum monetary penalty prescribed for its convictions is illegal. *See United States v. Mitsubishi Int'l Corp.*, 677 F.2d 785, 788 (9th Cir. 1982) (stating that although "the sentencing judge has broad discretion in setting probation conditions," this discretion "is limited by the requirement that . . . the statutorily prescribed maximum sentence cannot be increased by the terms of probation"); *United States v. Atl. Richfield Co.*, 465 F.2d 58, 61 (7th Cir. 1972) ("It is evident, however, that the conditions imposed by a court in connection with the suspension of sentence may not, at least if objected to by the defendant, exceed the maximum penalty authorized by Congress."); *see also United States v. Ferguson*, 369 F.3d 847, 852 (5th Cir. 2004) ("[T]he court erred by imposing a term of incarceration as well as a term of home detention that combine to exceed the maximum statutory term of incarceration."); *United States v. Interstate Cigar Co.*, 801 F.2d 555, 556 (1st Cir. 1986) (explaining that because "the mail fraud statute says that a convicted person shall be fined not more than $1000 or imprisoned not more than five years, or both[,] . . . the maximum penalty against a corporation that commits mail fraud cannot amount to more than a $1000 fine"). The Court is therefore not persuaded by the Government's claim that "community service obligations

7

are indeterminate . . . [and] are open-ended and within the discretion of the Court." (Dkt. No. 821 at 6.)

**IV. Conclusion**

The maximum statutory fine for the crimes of which CITGO was convicted is $2,090,000. Accordingly, any monetary penalty in excess of that amount—regardless of whether it is categorized as "community service," "community restitution," or "monitoring expenses," or whether the payment is made to a charity instead of the United States Treasury—is impermissible.

CITGO's Motion to Bar the Government from Seeking a Monetary Penalty in Excess of the Statutory Maximum (Dkt. No. 820) is therefore **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 18th day of September, 2012.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE